UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT L. KAMPHAUS,

          Plaintiff,                    Case No. 2:14-cv-12486
                                        District Judge David M. Lawson
v.                                       Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.
_____/

## RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 15) AND TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 13)

**I.**    **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Defendant's motion for summary

judgment (DE 15), **DENY** Plaintiff's motion for summary judgment (DE 13), and

**AFFIRM** the Commissioner's decision.

**II.**    **REPORT**

      Plaintiff, Robert L. Kamphaus, brings this action under 42 U.S.C. §§ 405(g)

and 1383(c)(3) for review of a final decision of the Commissioner of Social

Security ("Commissioner") denying his application for social security disability

insurance benefits. This matter is before the United States Magistrate Judge for a

Report and Recommendation on Plaintiff's motion for summary judgment (DE

13), the Commissioner's memorandum in opposition and cross motion for summary judgment (DE 15), Plaintiff's reply (DE 16), and the administrative record (DE 7).

## A.    Background

Plaintiff protectively filed his application for benefits on January 26, 2012, alleging that he has been disabled since September 14, 2009, at age 57.  (R. at 53.) Plaintiff alleges disability as a result of inability to handle stress, sleep deprivation, inability to multi-task, and reduced mental abilities to work.  (Id.)  Plaintiff's application was denied.  Plaintiff sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  ALJ Melvyn B. Kalt held a hearing on April 9, 2013 and subsequently determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 20-52.)   On April 22, 2014, the Appeals Council denied Plaintiff's request for review.  (R. at 1-4.)  ALJ Kalt's decision became the Commissioner's final decision.  Plaintiff then timely commenced the instant action.

## B.    The Administrative Record

### 1.    Plaintiff's Medical Record

 Plaintiff complains of back pain and sleep apnea.  He underwent an MRI on October 31, 2003, which revealed multilevel degenerative endplate changes and degenerative disc disease of the lumbar spine and visualized thoracic spine most

pronounced at the L5-S1 level and a 2.0 cm hemangioma.  (R. at 204.)  On November 9, 2011, Plaintiff's primary care physician, Eric N. Neisch, M.D., noted that Plaintiff's lower back condition "was bad during the summer [but was] now improved."  (R. at 162.)  Dr. Neisch discussed stretches with Plaintiff as a way to treat his back pain.  On February 1, 2012, Dr. Neisch again noted that Plaintiff's lower back pain was improved.  (R. at 159.)  Upon examination, Dr. Neisch found Plaintiff to have normal motor strength in the upper and lower extremities.  (R. at 160.)  On February 4, 2013, Dr. Neisch again noted that Plaintiff's lower back pain was improved.  (R. at 198.)  On February 13, 2013, Dr. Neisch indicated that, while Plaintiff's back pain had improved, he had pain when standing for over one hour.  (R. at 196.)  Upon examination, Plaintiff's lower back revealed normal sacroiliac joint mobility bilaterally, with significant muscle spasm, paraspinal spasm, paraspinal tenderness, and a positive straight-leg raise test, although Plaintiff's motor system, reflexes, and gait were normal.  (Id.)  Dr. Neisch recommended that Plaintiff continue with his current therapy of Motrin and stretches.

Plaintiff also saw Dr. Neisch for his sleep apnea problems.  On November 9, 2011 and February 1, 2012, Dr. Neisch found Plaintiff to be alert and oriented.  (R. at 160 and 163.)  On February 1, 2012, Dr. Neisch noted that Plaintiff's response to

therapy with a CPAP[1] machine had been fair, although he still woke up at night "because of [Plaintiff's] previous work hours." (R. at 159.) On February 4, 2013, Plaintiff noted that he still got up in the middle of the night, but denied sleepiness or sleep problems. (R. at 198-99.)

On April 16, 2012, Plaintiff underwent examination by Consultative Examiner Nick Boneff, Ph.D. (R. at 187-190.) Dr. Boneff found that Plaintiff had "mild problems with concentration and attention" and "no current psychiatric symptoms of impairments of memory or concentration that would restrict him from doing work related activities at a sustained pace." (R. at 189.)

On May 3, 2012, State Agency reviewer James Tripp, Ed.D, concluded that Plaintiff had "no psychiatric symptoms or impairments of memory or concentration that would restrict him from doing work related activities at a sustained pace." (R. at 58.) On June 5, 2012, State Agency reviewer Sonia Ramirez-Jacobs, M.D., concluded that Plaintiff's memory condition did not cause significant limitations in his ability to perform basic work activities. (R. at 60.)

Dr. Neisch completed a physical RFC questionnaire on February 13, 2013. (R. at 192-95.) He opined that Plaintiff had ongoing symptoms of back pain and

---

[1] Plaintiff refers to a continuous positive airway pressure treatment, or "CPAP," which "uses mild air pressure to keep the airways open" during sleep. *See* National Heart, Lung, and Blood Institute, https://www.nhlbi.nih.gov/health/health-topics/topics/cpap (last visited June 16, 2015).

sleep apnea, and that Plaintiff was fatigued even with the use of the CPAP. (R. at 192.) He further opined that Plaintiff would be off task more than 25% of the day because the stress of work would affect his back. (R. at 193.) Dr. Neisch indicated that Plaintiff could sit for one hour and stand for one hour, but would need periods of walking and unscheduled breaks every hour. (R. at 194.) He noted that Plaintiff could never lift fifty pounds, but could lift ten pounds frequently. (Id.)

### 2.   Function Reports

Plaintiff and his former co-worker, James Landon, completed Function Reports. In his Function Report, Plaintiff indicated that he watches news, cleans the house, and can walk to the end of the street and back. (R. at 119.) He further noted that he cooks meals daily, does house and yard work, shops for groceries, pays bills, and spends time with others. (R. at 121-22.)

In his third-party Function Report, Mr. Landon stated that Plaintiff struggled to stay awake during meetings and lost focus due to his irregular sleeping pattern, noting that Plaintiff "would often work offset hours." (R. at 134-35.) Specifically, Mr. Landon stated that Plaintiff would work "several days in a row and often odd hours," such as 8:00 a.m. to 5:00 p.m. for a few days and then 6:00 p.m. to 2:00 a.m. (R. at 141.) He indicated that Plaintiff forgot to button and tuck in his work shirts. (R. at 135.) Mr. Landon also noted that Plaintiff followed written instructions "fairly well," but had difficulty with spoken instructions. (R. at 139.)

As to Plaintiff's physical capabilities, Mr. Landon indicated that Plaintiff was able to complete household chores such as cleaning, yard work, and snow removal. (R. at 136.) In addition, Mr. Landon noted that Plaintiff was "very capable" of fishing and motorcycle riding. (R. at 138.)

### C.   Hearing Testimony

#### 1.   Plaintiff's Testimony

At the October 25, 2012 administrative hearing, the 61-year-old Plaintiff testified that he lived with his wife of 19 years. (R. at 36.) He completed four years of college at the Lawrence Institute of Technology, and previously worked as a production control specialist for the Rouge Steel Company. (R. at 36.) Plaintiff testified that he retired from Rouge Steel on September 15, 2009 because of memory problems and chronic fatigue which caused him to make "big mistakes." (R. at 37.) He also fell asleep on the job more than once. (R. at 39.) Plaintiff indicated that he slept with a CPAP machine as a result of his sleep apnea. (R. at 46.) Plaintiff noted that, if he were offered his old job again, he could not take it because the stress level would be too high. (R. at 38.)

Plaintiff averred that he had memory and concentration problems, and needs to "write everything down," so as not to forget. (R. at 37.) He testified that his wife reminds him to do general housework and pay bills. (R. at 38.)

6

Plaintiff testified that, in addition to sleep apnea, he had a sleep disorder as a result of shift work at his prior job.  (R. at 39.)  He indicated that, despite no longer working shifts, he still has trouble sleeping, which frequently makes him tired during the day.  (R. at 39-40.)

Plaintiff testified that he had back problems which began when he fell down on an unplowed area while carrying a forty-pound water bottle at work.  (R. at 40.)  Plaintiff indicated that he still had back pain in the lower left side of his back, which he rated as five or six out of ten on a normal day.  (R. at 40-41.)  Plaintiff testified that the pain goes down his legs and sometimes causes numbness and tingling.  (R. at 41.)  He testified that he had "bad days" two to three times per week, but that his back constantly hurt.  (R. at 45.)  Lifting items made his pain worse, and he treated it with "a couple Motrins."  (R. at 41.)

Plaintiff testified that he can stand for thirty minutes before needing to sit down and stretch, and that he can sit for forty-five minutes before walking around.  (R. at 41.)  He averred that he could walk no more than forty-five minutes, or less than a quarter mile, and can lift ten pounds but not repeatedly.  (R. at 42.)  Plaintiff testified that he spends a lot of time in his recliner with a heating pad for the pain.  (R. at 42.)

Plaintiff testified that, on a normal day, he wakes up at 6:00 A.M., and helps with household chores, including light laundry in the basement, vacuuming,

cleaning, mowing, and grocery shopping, but that he needed breaks after twenty to thirty minutes. (R. at 43-44.) Plaintiff testified that he drives, belongs to a fishing club, and fishes about once a month. (R. at 44.)

### 2.   Vocational Expert Testimony

Kimberly Warner testified as the Vocational Expert ("VE") at the April 9, 2013 administrative hearing. (R. at 47-51.) The VE classified Plaintiff's past work as a production control scheduler, which was a skilled position, with a specific vocational preparation ("SVP") of 6, performed at the medium exertional level.[2] (R. at 47.) The ALJ then asked the VE a series of hypotheticals. First, he asked if Plaintiff would be able to return to his past work if his testimony at the hearing was fully credited, which the ALJ answered in the negative. (R. at 48.) Nor would the hypothetical individual be able to perform the jobs to which his skilled transferred. (Id.)

Second, the ALJ asked if the hypothetical individual, who was limited to unskilled work, could lift up to fifty pounds on occasion and twenty-five pounds repeatedly, could perform work in the local or national economy. (R. at 48.) The VE clarified that those levels would put the positions in the heavy exertion level,

---

[2] "The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." SSR 00-4P.

and the ALJ asked for jobs at the medium level.  Based on this hypothetical, the

VE testified that the hypothetical individual could perform medium unskilled

positions, including hand packager, with 3,400 jobs in Southeast Michigan and

10,000 in the state; package sealer, with 2,100 jobs in Southeast Michigan and

4,800 in the state; order filler, with 2,800 jobs in Southeast Michigan and 6,000 in

the state.  (R. at 49.)  The VE clarified that, if Plaintiff's testimony was fully

credited, he could not perform these jobs because of memory lapses and fatigue,

which could lead to problems with productivity, concentration, and absenteeism.

(Id.)  Upon questioning from Plaintiff's counsel, the VE testified that there would

be no sit/stand option at the medium exertional level.  (R. at 50.)

### D.  THE ADMINISTRATIVE DECISION

On May 23, 2013, the ALJ issued his decision.  (R. at 20-29.)  At step one of

the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in

substantially gainful activity since September 14, 2009.  (R. at 22.)

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a
five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4).
Although a dispositive finding at any step terminates the ALJ's review, *see Colvin
v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential
review considers and answers five questions:

1.  Is the claimant engaged in substantial gainful activity?
2.  Does the claimant suffer from one or more severe impairments?
3.  Do the claimant's severe impairments, alone or in combination, meet
    or equal the criteria of an impairment set forth in the Commissioner's
    Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

At step two, the ALJ found that Plaintiff had the following severe impairments: affective disorder and sleep apnea.  (R. at 22.)  The ALJ further found that Plaintiff's back problems, obesity, and hypertension were not severe impairments.  (R. at 22-23.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 23-24.)

At step four, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[3] and determined that Plaintiff can perform a full range of work at all exertional levels, with the non-exertional limitation to unskilled work with simple, repetitive, routine tasks.  (R. at 24.)  As support for this, the ALJ noted that

---

4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[3] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §404.1545(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

Plaintiff's problems are only "mild to moderate" and that "there is nothing in the evidence establishing any exertional limitations."  (R. at 27.)

Relying on the VE's testimony, the ALJ determined that Plaintiff was unable to perform his past relevant work as a production control scheduler, but concluded that he was capable of performing other jobs that exist in significant numbers in the state and national economy, including hand packager, packager/sealer, and order filler.  (R. at 28.)   He therefore concluded that Plaintiff was not disabled under the Social Security Act.  (Id.)

### E.   STANDARD OF REVIEW

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241

11

(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."). Furthermore, the claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability." *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F. ANALYSIS

In his motion for summary judgment, Plaintiff asserts two statements of error. First, he contends that the ALJ erred by failing to properly account for his impairments of fatigue, obesity, and concentration problems when assessing his RFC. Second, he argues that the he is entitled to a remand under Sentence Six of § 405(g) due to new and material evidence. The Commissioner opposes Plaintiff's motion, asserting that she is entitled to a grant of summary judgment because substantial evidence supports the ALJ's conclusions. The Undersigned will address each argument in turn.

#### 1. Substantial Evidence Supports the ALJ's RFC Assessment

Plaintiff's RFC is "the most [he or she] can still do despite the physical and mental limitations resulting from [his or] her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); s*ee also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of Plaintiff's RFC is an issue reserved to the Commissioner and must be supported by substantial evidence. 20 C.F.R. §§

13

404.1527(3), 416.927(e).  "'ALJs must not succumb to the temptation to play

doctor and make their own independent medical findings.'"  *Simpson v. Comm'r of*

*Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98

F.3d 966, 970 (7th Cir. 1996)).

Pursuant to Social Security Rule 96-8p, the RFC assessment must include:

> [A] narrative discussion describing how the evidence supports
> each conclusion, citing specific medical facts (e.g., laboratory
> findings) and nonmedical evidence (e.g., daily activities,
> observations).   In assessing RFC, the adjudicator must discuss
> the individual's ability to perform sustained work activities in an
> ordinary work setting on a regular and continuing basis (i.e., 8
> hours a day, for 5 days a week, or an equivalent work schedule),
> and describe the maximum amount of each work-related activity
> the individual can perform based on the evidence available in the
> case record. The adjudicator must also explain how any material
> inconsistencies or ambiguities in the evidence in the case record
> were considered and resolved.

S.S.R. 96-8-, 1996 WL 374184, at *6-7. "Although SSR 96–8p requires a

'function-by-function evaluation' to determine a claimant's RFC, case law does

not require the ALJ to discuss those capacities for which no limitation is alleged."

*Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002).  Instead, the

ALJ '"need only articulate how the evidence in the record supports the RFC

determination, discuss the claimant's ability to perform sustained work-related

activities, and explain the resolution of any inconsistencies in the record."' *Id.*

(quoting *Bencivengo v. Comm'r of Soc. Sec.,* No. 00–1995,  251 F.3d 153, slip op.

at 5 (3d Cir. Dec. 19, 2000).

In the instant case, Plaintiff challenges the ALJ's findings related to his impairments of fatigue, obesity, and concentration problems. His primary argument seems to simply be that substantial evidence does not support the ALJ's conclusions that Plaintiff does not have significant work limitations related to these impairments. The Undersigned will consider each impairment in turn.

### a.    Fatigue

The ALJ found Plaintiff's sleep apnea to be a severe impairment at step two, but concluded that he had no associated limitations to preclude unskilled work. (R. at 22 and 25.) As support for his conclusion, the ALJ noted that Plaintiff's February 2013 treatment records show that his symptoms were improved with the use of a CPAP machine. (R. at 25, 198.) He also pointed to Plaintiff's February 4, 2013 examination, during which he denied fatigue, excessive sleepiness, and sleep problems. (R. at 25 and 199.)

Plaintiff disputes the ALJ's conclusions, noting that the February 2013 treatment records lists Plaintiff's symptoms as "fair" with the use of a CPAP and note that he still gets up in the night. Plaintiff also contends that the ALJ erred by discounting the physical RFC assessment completed by Plaintiff's treating physician, Dr. Neisch, on February 13, 2013. (R. at 192-95.) Dr. Neisch opined that Plaintiff experiences fatigue, even with the use of his CPAP machine. (R. at 192.) The ALJ gave no weight to the opinion because it was contrary to Dr.

Neisch's actual *treatment record* from nine days earlier that "reveals no problems with sleeping or fatigue."  (R. at 27.)[3]

Plaintiff's arguments are unavailing.  There is substantial evidence in the record for the ALJ's RFC conclusion with respect to the impact of Plaintiff's fatigue.  Rather than identifying errors in the ALJ's RFC assessment, Plaintiff instead points to other evidence in the record that supports his conclusions and asks this Court to re-weigh the evidence in his favor.  *See VanSingel v. Comm'r of Soc. Sec.*, 26 F. App'x 488, 489 (6th Cir. 2002) ("If supported by substantial evidence, the Commissioner's decision must be affirmed, even if [the reviewing court] would have arrived at a different result.") (citing *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir.1983)).  Such an analysis would be incompatible with the 'substantial evidence' standard of review. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (concluding that "[a]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.").

Furthermore, the ALJ was entitled to discount the RFC assessment of treating physician Dr. Neisch as inconsistent with his own treatment notes.  *See*

---

[3] In examining this obvious inconsistency, the ALJ notes that "the possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another."  (R. at 27.)  He also acknowledges the "reality . . . that patients can be quite insistent and demanding in seeking supportive notes from their physicians, who might provide such a note in order to satisfy their patients' requests and avoid unnecessary doctor/patient tension."  (Id.)

*Lester v. Soc. Sec. Admin.*, 596 F.App'x 387, 389 (6th Cir. 2015) (concluding that the ALJ "reasonably discounted [the treating physician's] medical opinion" where "the proposed limitations were inconsistent with his own treatment notes. . . ."); *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (Emphasizing that a treating physician's opinion is not entitled to controlling weight where it is not supported by other evidence in the record.)

Moreover, there is substantial evidence in the record that Plaintiff's sleep deprivation problems were chiefly due to "working odd hours several days in a row," e.g., "working 8:00 a.m. to 5:00 p.m. for three days, then 6:00 p.m. to 2:00 a.m. the following days." (R. at 26 and 141.) The ALJ found that Plaintiff's "problems concerning lack of focus and concentration appear to have been caused by an irregular work pattern that affected his sleep." (R. at 26.) This is well supported by the record. (*See* R. at 135 and 141.) The ALJ's analysis of Plaintiff's fatigue is therefore supported by substantial evidence.

### b. Obesity

At step two, the ALJ found that Plaintiff's obesity was not a severe impairment, noting that Plaintiff weighed 223 pounds with a desired weight of 200. (R. at 25.) The ALJ concluded that there were no obesity related limitations in the evidence. Plaintiff asserts that the ALJ failed to consider his obesity when determining his RFC. Specifically, he argues that the ALJ should have considered

that obesity increases the risk of sleep apnea and that '"the effects of obesity may be subtle, such as . . . slowed reactions that may result from obesity-related sleep apnea.'" (DE 13 at 9-10, quoting S.S.R. 02-1p.)

When obesity is at issue, an ALJ need not employ a "particular mode of analysis" when considering its impact. *Bledsoe v. Barnhart*, 165 F. App'x 408, 411-12 (6th Cir. 2006). The ALJ must, however, "consider the claimant's obesity in combination with other impairments at all stages of the sequential evaluation." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009). While there is no longer a Listing for obesity, "obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing." S.S.R. 02-1P. The burden is on Plaintiff to show specifically "how the obesity, in combination with other impairments, limited her [or his] ability to a degree inconsistent with the ALJ's RFC determination." *Smith v. Astrue*, 639 F. Supp. 2d 836, 846-47 (6th Cir. 2009).

Plaintiff contends that the ALJ did not include a statement at step four that he considered all impairments, both severe and non-severe, and argues that this is an error. To support this proposition, he points to opinions remanding where the ALJ failed to consider sleep apnea as an effect of obesity. *See Monda v. Astrue*, No. 1:09CV2618, 2011 WL 1344285, at *5 (N.D. Ohio Mar. 28, 2011); *Dellinger v. Astrue*, No. Civ.A 509-310-DCR, 2010 WL 750363, at *3 (E.D. Ky. Mar. 1,

18

2010).  In both of those cases, the ALJ found the claimant's obesity to be a severe

impairment, which is distinguishable from the instant case.

More importantly, however, Plaintiff fails to point to any other evidence that

his obesity significantly exacerbated his impairment of sleep apnea or that any

resulting limitations were greater than those opined by the ALJ in his RFC

assessment.  Nor did Plaintiff testify to the effects of his obesity at the hearing.

*See, e.g., Griffith v. Comm'r of Soc. Sec.*, No. Civ. A. 12-10579, 2014 WL

1213257, at *19 (E.D. Mich. Feb. 14, 2014) *report and recommendation adopted*,

No. 12-15079, 2014 WL 1224807 (E.D. Mich. Mar. 24, 2014) (noting that

Plaintiff's failure to testify about the limiting effects of obesity provided was

evidence supporting the ALJ's limited consideration).  Moreover, the ALJ did

consider the effects of Plaintiff's sleep apnea, as noted above. Substantial evidence

supports the ALJ's analysis of Plaintiff's obesity.

### c.    Concentration Problems

Plaintiff contends that the ALJ failed to appropriately account for his

concentration problems.  As support for this, he points to his Function Report, in

which Plaintiff indicated that he could only pay attention for a few minutes and

had difficulty concentrating while reading.  (R. at 122-23.)  Plaintiff also notes that

he explained to the consultative examiner that he could not multi-task and had

problems concentrating.  (R. at 188.)  Finally, Plaintiff points to the third-party

19

Function Report completed by Plaintiff's former colleague, which indicated that Plaintiff would lose focus and had trouble following conversations.  (R. at 134.)

The ALJ, however, found Plaintiff had moderate difficulties with concentration, persistence, or pace, and accordingly limited him to unskilled work. (R. at 24.)  The ALJ gave significant weight to consultative examiner Dr. Boneff, who opined that Plaintiff had only mild problems with concentration, and that there were no impairments of concentration that would restrict his work-related activities.  (R. at 25 and 189.)  Plaintiff does not demonstrate how such a limitation was in error, or how Plaintiff's impairments related to concentration required a greater limitation.  *See Her v. Comm'r of Soc. Sec.*, 203 F. 3d 388, 391 (6th Cir. 1999) (holding that Plaintiff always bears the burden of establishing his or her RFC).  Accordingly, substantial evidence supports the ALJ's treatment of Plaintiff's concentration.

### 2.    Sentence Six Remand is Not Warranted

Plaintiff contends that remand is necessary under Sentence Six of § 405(g). He specifically takes issue with the ALJ's conclusion that his back problems were non-severe, and points to a June 2013 MRI showing disc degeneration.  (DE 13 at 14.)  The Court can remand for further administrative proceedings "if a claimant shows that the evidence is new and material, and that there was good cause for not

presenting it in the prior proceeding." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148-49 (6th Cir. 1996). I will consider each requirement in turn.

### a.    New

For the purposes of a remand under Sentence Six, evidence is new "only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)(quoting *Sullivan v. Finklestein*, 496 U.S. 617, 626 (1990)). Here, Plaintiff has met his burden that the evidence is new, as it did not exist until after the ALJ's May 23, 2013 decision.

### b.    Material

A claimant satisfies his or her burden of proof as to materiality by demonstrating that "there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Hum. Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). Plaintiff argues that the results of the June 2013 MRI are material because they are consistent with Plaintiff's complaints of back pain and postural limitations. Further, Plaintiff points to the ALJ's statement that there was "no indication that the back problem has lasted 12 months or will last 12 months . . . and the only MRI in evidence is ten years old." (DE 16 at 8.) The Commissioner counters that the ALJ considered the 2003 MRI and Plaintiff fails to show any difference in degree between the two, making the new evidence cumulative. In his

21

reply, Plaintiff explains that the 2013 MRI reveals compression, which could cause significant muscle spasm, paraspinal spasm, and tenderness.  (DE 16 at 5.)

Plaintiff has failed to meet his burden of materiality for several reasons. First, although he attempts to describe the differences between his MRIs, there is no medical evidence to demonstrate that he was more functionally limited based on these results than those seen in his previous MRI.  *See Guy v. Comm'r of Soc. Sec.*, No. 11-12828, 2013 WL 1148413, at *5 (E.D. Mich. Feb. 19, 2013) *report and recommendation adopted*, No. 11-CV-12828, 2013 WL 1148412 (E.D. Mich. Mar. 19, 2013) (noting that "disability determinations turn on . . . the functional limitations caused by Plaintiff's impairment.").  Second, even if the MRI did indicate further limitations, Plaintiff's June 13, 2013 MRI was completed after the ALJ's May 23, 2013 opinion, and Plaintiff does not demonstrate how the MRI reflected his condition during the pendency of the proceedings.  *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) ("Evidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial.").  Third, the ALJ considered Dr. Neisch's February 13, 2013 treatment note that an examination of Plaintiff's lower back revealed significant muscle spasm, paraspinal spasm, paraspinal tenderness, and a positive straight-leg raise test, which is similar to Plaintiff's description of the 2013 MRI, indicating that the evidence is cumulative.  *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d

591, 598 (6th Cir. 2005) (declining to overturn the district court's holding that remand was unnecessary where the evidence was "largely cumulative of evidence and opinions already present on the record.").

Finally, the ALJ did not base his non-severe finding on Plaintiff's lack of MRI evidence alone. Instead, he noted that Plaintiff's treatment was conservative (Motrin and stretches) and that he was able to perform household chores, including cutting the grass, driving, and shopping. (R. at 22-23.)[4] He also pointed to Dr. Neisch's February 2013 opinion that Plaintiff's pain had improved, that he had a normal gait, normal sensation, reflexes, motor strength, and sacroiliac joint mobility. (R. at 23.) He observed that Plaintiff "continued working on a fulltime basis performing medium exertional work for six years after the [initial MRI]." (Id.) Accordingly, Plaintiff has not demonstrated a reasonable possibility that the June 2013 MRI would have prompted a different disposition with respect to Plaintiff's back pain.

### c.   Good Cause

Plaintiff also fails to show good cause for a Sentence Six remand. He notes only that "[t]he MRI was conducted after the hearing, thus 'good cause' existed for the later submission." (DE 13 at 14.) The Sixth Circuit, however, "has taken a

---

[4] In his RFC analysis, the ALJ also noted Plaintiff's ability to ride a motorcycle (R. at 26), which his former co-worker described him as being "very capable" of doing. (R. at 138.) In addition, he was able to perform snow removal and "had no difficulties with watching television, reading, or fishing." (R. at 26, 136, and 138.)

harder line on the good cause test," requiring a claimant to "give a valid reason for his [or her] failure to obtain evidence prior to the hearing." *Oliver v. Sec'y of Health & Hum. Servs.*, 804 F.2d 964, 966 (6th Cir. 1986); *see also Foster*, 279 F.3d at 357 ("A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ."). Here, Plaintiff provides no reason for failure to obtain such evidence prior to the hearing. Accordingly, I do not recommend a remand under Sentence Six of §405(g).

### G.   CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment, **GRANT** Defendant's motion for summary judgment, and **AFFIRM** the Commissioner of Social Security's decision.

### III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated: June 22, 2015                    s/Anthony P. Patti
                                        ANTHONY P. PATTI
                                        UNITED STATES MAGISTRATE JUDGE


25

I certify that a copy of this document was sent to parties of record on Monday, June 22, 2015, electronically and/or by U.S. Mail.

s/Michael L. Williams
Case Manager to the
Honorable Anthony P. Patti